West's Louisiana Statutes Annotated
Louisiana Revised Statutes
Title 22. Insurance Code (Refs & Annos)
Chapter 4. Insurance and Insurance Contract Requirements by Type of Insurance (Refs & Annos)
Part II. Life Insurance and Annuities
Subpart A. Life Insurance and Annuities in General

LSA-R.S. 22:912
Formerly cited as LA R.S. 22:647

# § 912. Exemption of proceeds; life, endowment, annuity

Effective: August 1, 2012
Currentness

A. (1) The lawful beneficiary, assignee, or payee, including the insured's estate, of a life insurance policy or endowment policy, shall be entitled to the proceeds and avails of the policy against the creditors and representatives of the insured and of the person effecting the policy or the estate of either, and against the heirs and legatees of either person, and such proceeds and avails shall also be exempt from all liability for any debt of the beneficiary, payee, or assignee or estate, existing at the time the proceeds or avails are made available for his own use. For purposes of this Subsection, the proceeds and avails of the policy include the cash surrender value of the policy.

(2) The exemption authorized in Paragraph (1) of this Subsection from seizure under any writ, mandate, or process issued by any court of competent jurisdiction, including any bankruptcy proceedings, shall not apply to that portion of the cash surrender value, or loan value of any life insurance policy, endowment policy, or annuity contract payable upon surrender during the lifetime of the insured or annuitant which exceeds the sum of thirty-five thousand dollars if such policy or contract was issued within nine months of issuance of such writ, mandate, or process or the filing of a voluntary or involuntary bankruptcy proceeding under the United States Code. However, an insurer shall be liable only for such amounts that exceed the thirty-five thousand dollar exemption which are in the insurer's possession at the time the insurer receives, at its home office, written notice by or on behalf of a creditor of claims being made against such value or interest with specification of the amount claimed. The insurer shall have no obligation to determine the validity or the accuracy of the amount of the claim and shall be relieved of further liability of any kind with respect to the monies paid upon request of a creditor. An insurer shall be entitled to be paid by preference and priority over the claim of any seizing creditor the balance of any bona fide loan to the insured or owner which is secured by such interest or value in the policy or contract.

B. (1) The lawful beneficiary, assignee, or payee, including the annuitant's estate, of an annuity contract shall be entitled to the proceeds and avails of the contract against the creditors and representatives of the annuitant or the person effecting the contract, or the estate of either, and against the heirs and legatees of either person, saving the rights of forced heirs, and the proceeds and avails shall also be exempt from all liability for any debt of the beneficiary, payee, or assignee or estate, existing at the time the proceeds or avails are made available for his own use.

(2) The term "annuity contract" shall include any contract which:

(a) Is issued by a life insurance company licensed to provide the contract in the state in which it was issued at the time of issue.

(b) States on its face or anywhere within the terms of the contract that it is an "annuity" including but not limited to an immediate, deferred, fixed, equity indexed, or variable annuity, irrespective of current pay status or any other definition of "annuity" in Louisiana law.

(c) Provides the contract owner the ability to defer United States income taxes on any interest earned and not distributed to the owner.

(d) Transfers some risk of financial loss to the insurance company for financial consideration.

(e) Was approved as an annuity contract by the Department of Insurance of the state in which it was issued prior to issue.

C. The lawful beneficiary designated in an education savings account depositor's agreement to receive account funds in the event of the account owner's death, including the account owner's estate, of the funds contained in an education savings account established pursuant to R.S. 17:3095 shall be entitled to the proceeds and avails of the education savings account against the creditors and representatives of the account owner or the person effecting the account, or the estate of either, and against the heirs and legatees of either person, except the rights of forced heirs, and the proceeds and avails shall also be exempt from all liability for any debt of the beneficiary or estate existing at the time the proceeds and avails are made available for his own use.

D. (1) The provisions of Subsections A, B, and C of this Section shall apply:

(a) Whether or not the right to change the beneficiary is reserved or permitted in the policy, contract, or education savings account depositor's agreement.

(b) Whether or not the policy, contract, or education savings account depositor's agreement is made payable to the person whose life is insured, to his estate, or to the estate of an annuitant or to the estate of an education savings account owner if the beneficiary, assignee, or payee shall predecease the person.

(2) This Subsection shall not be construed so as to defeat any policy or contract provision which provides for disposition of proceeds in the event the beneficiary, assignee, or payee shall predecease the insured, annuitant, or education savings account owner.

E. No person shall be compelled to exercise any rights, powers, options, or privileges under any policy, contract, or education savings account depositor's agreement.

F. There shall be excepted from the provisions of this Section a debt secured by a pledge of a policy, any rights under the policy that may have been assigned, and any advance payments made on or against the policy.

**Credits**
Renumbered from R.S. 22:647 by Acts 2008, No. 415, § 1, eff. Jan. 1, 2009. Acts 1958, No. 125. Amended by Acts 1987, No. 210, § 1, eff. July 2, 1987; Acts 1990, No. 910, § 1; Acts 1997, No. 1416, § 2, eff. July 15, 1997; Acts 1999, No. 63, § 3. Amended by Acts 2011, No. 94, § 1, eff. Jan. 1, 2012; Acts 2012, No. 271, § 1.

**Editors' Notes**

**REDESIGNATION AND RENUMBERING OF TITLE 22--ACTS 2008, NO. 415**

<Acts 2008, No. 415, § 1 amended and reenacted Title 22 of the Louisiana Revised Statutes of 1950, the Louisiana Insurance Code, and directed the Louisiana State Law Institute to redesignate the provisions of Title 22, formerly comprised of R.S. 22:1 to 22:3311, into a new format and numbering scheme comprised of R.S. 22:1 to 22:2371, without changing the substance of the provisions.>

<Sections 2 and 3 of Act 415 provide:>

<"Section 2. The Louisiana State Law Institute is hereby directed to change any citations, Chapters, Parts, Subparts, or other references contained in the current provisions of Title 22 of the Louisiana Revised Statutes of 1950 or in any other Title or Code of the Revised Statutes to reflect the new citations, Chapters, Parts, Subparts, or other references found in this Act.>

<"Section 3. This Act shall become effective on January 1, 2009".>

**PRE-2008 STATUTORY REFERENCES IN EDITORIAL NOTES**

<Statutory references in italic and historical notes and notes of decisions written before 2008 conform to the Title 22 numbering scheme as it existed prior to the complete renumbering of Title 22 by Acts 2008, No. 415. For Title 22 provisions as renumbered in 2008, see the Disposition Table at the beginning of this volume.>

Notes of Decisions (112)

LSA-R.S. 22:912, LA R.S. 22:912
Titles 2, 4, 8, 16, 19, 21, 25, 27, 31, 34, 35, 41, 43, and 51 of the Revised Statutes, the Code of Criminal Procedure, Code of Evidence and Children#s Code are current through the 2014 Regular Session. Titles 10 and 45 of the Revised Statutes, the Civil Code and Code of Civil Procedure are current through the 2014 Regular Session with Acts effective on or before December 31, 2014. All other statutes and codes are current through the 2013 Regular Session. The Constitution is current through January 1, 2014.

**End of Document**

© 2014 Thomson Reuters. No claim to original U.S. Government Works.

U.S. DEPARTMENT OF JUSTICE
Louisiana-Western
United States Courthouse
300 Fannin Street, Suite 3201
Shreveport, LA 71101

December 16, 2020

Wendi LaBorde
79885 Ciego Drive
Bermuda Dunes, CA 92203-1454

| Re: | Debtor Name: | Wendi L. LaBorde |
|---|---|---|
| | Account Number: | 2010A19914/ |

## NOTICE OF EXTENSION OF THE TEMORARY SUSPENSION OF THE COLLECTION OF U.S. DEPARTMENT OF EDUCATION DEBTS

Dear Wendi LaBorde:

Due to administrative action, in response to the Coronavirus Disease of 2019 ("COVID-19"), the temporary suspension of the U.S. Department of Justice's ("Department") debt collection and enforcement activities of the U.S. Department of Education ("Education") civil debts by United States Attorneys' Offices ("USAO") and Private Counsel firms ("PC") is extended **until January 31, 2021 ("Suspension Period")**. Please note that this Suspension Period supersedes all previous suspension notifications. The Suspension Period may be further extended by legislation or other administrative action.

The Suspension Period applies to all defaulted and non-defaulted Direct Loans, as well as defaulted and non-defaulted Federal Family Education Loan (FFEL) Program loans and Federal Perkins Loans if Education holds the same.[1] The Suspension Period also applies to Health Education Assistance Loan (HEAL) Program loans.[2]

This notice is to inform you that during the Suspension Period, the USAOs and PC firms will do the following regarding federal student loans held by Education and referred to the Department for litigation, collection and enforcement:

- **Contact with Borrowers**. Suspend contact with borrowers;
- **Reduction of Interest Rate**. Reduce the interest rate on student loan debts during the Suspension Period to zero percent (0%);
- **Suspension of Treasury Offset Program (TOP).** Suspend the reduction or withholding (also known as "offset") of eligible federal payments authorized by the Internal Revenue Code and the Debt Collection Act of 1982, as amended by the Debt Collection Improvement Act of 1996. Unless necessary to protect interests of the United States that would otherwise be forfeited, no affirmative collection action will be taken against you for the duration of the Suspension Period. Depending on the nature of the debt, interest may accrue on the principal while offsets are suspended. **The Department will resume TOP offsets upon the conclusion of the Suspension Period**;

[1] Please note that some FFEL Program loans are owned by private lenders, and some Perkins Loans are owned by the institution attended by the borrower. These loans are not eligible for the relief discussed in this notice.

[2] The U. S. Department of Health and Human Services ("HHS") insured educational loans made by participating lenders for borrowers' graduate work in health sciences from 1978 to 1998. The HEAL Program loans were transferred to Education in 2014. Education owns the HEAL loans that HHS services.

- **Refund of TOP Offsets**. Return TOP funds collected from borrowers by offset on or after March 13, 2020; and

- **Suspension of Payments**. Suspend regularly scheduled payments you are making pursuant to an active payment plan or other agreement. Your payment plan will not be considered delinquent and/or in default, and unless necessary to protect interests of the United States that would otherwise be forfeited, no affirmative collection action will be taken against you for the duration of the Suspension Period. Your payment plan will be extended for a time period equal to the length of time of the Suspension Period or necessary to pay off the remaining debt balance. Should you wish to make voluntary payments during this time, please continue to do so as previously established in your payment plan or other agreement.

If your regularly scheduled payments have been set up through Pay.gov, **you will need to take action to suspend those payments in Pay.gov for the duration of the Suspension Period** unless you wish to continue making voluntary payments.

**Regularly scheduled payments will be reactivated upon the conclusion of the Suspension Period.** If you previously set up automatic payments through Pay.gov, **you will need to reactivate those payments in Pay.gov,** if you suspended them. Once the Suspension Period ends, failure to resume and continue to make payments in accordance to the terms and conditions of your payment plan may result in additional enforcement action.

The Suspension Period **does not apply to:**

- **Court Ordered Enforcement**. The Department and its agents **will not initiate new garnishment actions** on Education debts during the Suspension Period. Previously existing court ordered enforcement / garnishment actions continue in effect as ordered by the court.

Should you have any questions or concerns, please contact the Financial Litigation Unit for the United States Attorney's Office or the Private Counsel firm assigned to your debt at 318-676-3600.

Sincerely,
United States Department of Justice
Debt Collection Management
Nationwide Central Intake Facility

**Federal Student Aid**
An OFFICE of the U.S. DEPARTMENT of EDUCATION | PROUD SPONSOR of the AMERICAN MIND®

992687981 0061247-26 ***********AUTO**5-DIGIT 92203
WENDI L LABORDE
79885 CIEGO DR
BERMUDA DUNES CA 92203-1454

P5
T232

September 4, 2020

ACCOUNT #: 1003770156

**Subject Line:** Extension of your student loan flexibilities

Dear Wendi,

On Aug. 8, 2020, President Trump extended the 0% student loan interest rate and suspension of payments on federal student loans owned by the Department of Education (ED) until Dec. 31, 2020.

**What does this mean?**

- You are not required to make payments on ED-owned loans until Jan. 1, 2021, and no interest will accumulate.
- Collection activities, such as Treasury offsets and wage garnishments, will not resume until after Dec. 31, 2020.

- If your loan is in the process of being rehabilitated, you will continue to receive payment credit for each month during the suspension period when you would have otherwise made a payment under the terms of your rehabilitation agreement.
- If you can make payments on your student loans while your loans are at 0% interest rate, your payments go farther toward reducing the principal balance of your loan amount once any outstanding interest has been paid.

**You Never Have to Pay for Help**
Avoid student aid scams. You never have to pay for help with your federal student aid. Your student loan servicer provides free help with your questions or concerns about your loan payments.

**Contact us** at Default Resolution Group at 1-800-621-3115 (TTY 1-877-825-9923) from 8 a.m. to 10 p.m. ET Monday through Friday and 8 a.m. to 6 p.m. ET on Saturday. You can also find more information at StudentAid.gov/coronavirus.